SELDEN and others *v.* STOCKWELL SELF-LIGHTING GAS-BURNER Co.

*(Circuit Court, S. D. New York.　September 5, 1881.)*

1. LETTERS PATENT—POCKET-LIGHTING DEVICE.

    The first five claims of reissue No. 8,490, granted to George Selden, November 12, 1878, for an improvement in pocket-lighting devices, *held* to be infringed by the structure of the defendant, the differences between the two structures being merely formal.

2. SAME—ASSIGNMENTS.

    Section 4895 of the Revised Statutes, which provides that patents may be granted and issued or reissued to the assignee of the inventor or discoverer, does not require that the assignee shall be the immediate assignee of the inventor.

3. SAME—SAME.

    If the assignment which divested the inventor of his interest in a patent was made before July 8, 1870, the case falls within the exception to section 4895 of the Revised Statutes.

4. REISSUES.

    A patent is not void because it is a reissue of a reissue.

5. SAME—COMMISSIONER.

    The commissioner's decision upon an application which sets forth that the surrendered patent was inoperative by reason of a defective specification is conclusive.

6. SURRENDERS—REISSUES FOR SEPARATE PARTS.

    Where the original specification described a circular case for a pocket-lighting device, and an extended tube case for lighting at a height, *held* that, upon the surrender of the original patent, reissues for each form of apparatus, as distinct and separate parts of the thing patented, are valid.

*Edwin H. Brown*, for plaintiffs.

*George Hill*, for defendant.

BLATCHFORD, C. J.    This suit is brought on two patents.    The first one is reissue No. 8,490, granted November 12, 1878, to George Selden, one of the plaintiffs, for an "improvement in pocket lighting devices."    The original patent, No. 50,860, was granted November 7, 1865, to Philos B. Tyler, William M. Chandler, and L. F. Standish, and was surrendered and reissued October 23, 1877, to said Selden, in two divisions—No. 7,927, division A, and No. 7,928, division B. No. 8,490 was granted on the surrender of No. 7,927.    The specification of No. 8,490 is signed by said Selden, and not by Tyler, Chandler, and Standish, and was sworn to by Selden, and by no one else. It is as follows:

    "Be it known, that Philos B. Tyler, William M. Chandler, and L. F. Standish did invent certain new and useful improvements in pocket lighting devices, of which the following is a full, clear, and exact description; reference being had to the accompanying drawings making part of this specification, in which figure 1 is a side elevation of the lighter, figure 2 represents the same in sections, figure 3 is a rear view of a portion of one of the repeating matches employed, and figure 4 represents a longitudinal section through the same.    Similar letters of reference denote corresponding parts wherever used.    The invention relates to a novel lighter for carrying in the pocket, consisting of a case or shell adapted to enclose and protect a continuous or repeating match, and provided with appliances permanently attached to it for feeding and igniting the match, as hereinafter explained.    In the accompanying drawings, $a$ $a^1$ represents a case or shell made in the form of a shallow box, one side or plate, $a$, thereof being provided on its edge with a flange or rim, $a^2$, forming a chamber or magazine for containing the repeating match or tape, which, when in place, is covered by a hinged or removable cover, $a^1$. The plate or side, $a$, has a pin or arbor, $b$, secured to it, arranged about central to the magazine or chamber, and projecting through a perforation in

the cover, $a^1$; and a hook, $c$, pivoted on the cover, $a^1$, and engaging with the projecting end of the pin or arbor, $b$, serves to hold the cover in place. Figures 1 and 2 of the drawing show a convenient form of the case for general use, representing it as approximating a circular form, or rather that of a short cylinder, provided with what may be termed an 'eccentric extension,' and an opening or outlet through the same at $e$, through which the repeating match is fed outward, as desired. One wall of this outlet, $e$, extends slightly beyond the other, and forms a projecting lip or nose-piece, $d$, over which the repeating match passes as it is fed outward, said lip or nose-piece serving to support the match directly against the action of the igniting device. At a point near the outlet passage, $e$, the case or shell, $a$, is provided with a toothed wheel, $f$, or equivalent device, for feeding the match outward, the shaft of said wheel being journalled in the side walls or plates of the case or outlet passage, as shown at $f^1$. On the inner side of the flange or rim, $a^2$, opposite to the wheel, $f$, is secured a spring, $g$, which overhangs the feed wheel, $f$, and serves as a guiding apron for holding the repeating match or tape in contact with the wheel, insuring the endwise or feeding movement of said match or tape between the two when the wheel is rotated. Directly over the nose-piece, $d$, is a device, $h$, for igniting the repeating match, consisting of an angular lip or projection on a vibrating arm, $h^1$, which, at its rear end, is rigidly connected with a rock shaft or pin having its bearings in the case, $a$, or walls, $a^2$ $a^3$, and provided with a handle or thumb-piece on its outer end, outside of the case or shell, by means of which the igniting device, $h$, may be operated for igniting the match. The vibrating arm, $h^1$, is enclosed and protected by being placed within a compartment or chamber, $i$, as shown. The lighter case thus constructed is designed to enclose and protect a match composed of a strip of paper or tape, $k$, provided either with a continuous strip of igniting material, or with such material arranged in shots or pellets at regular intervals in its length, as shown at $m$, figures 3 and 4, and which, for adapting it to be placed in compact shape in the case, $a$, is rolled up, as shown in figure 2. Any suitable kind or preparation of igniting material may be used upon the tape or strip of paper, and, where it is used in connection with a tape or wick of other material than paper, said wick or tape may be saturated with stearine or other suitable material, adapting it to be readily ignited by the igniting pellets or strip. In operation the wick or tape is fed outward by means of the wheel, $f$, until a pellet or portion of igniting material rests on the nose-piece, $d$, when it is ignited by the vibration of the arm, $h^1$, and igniting device, $h$, and in turn serves to ignite the wick or tape, which may then be used for any purpose to which it is applicable. The wick will continue to burn as long as any portion of it projects beyond the outlet passage, $e$, or nose-piece, $d$, and may be fed outward and allowed to burn as long as required, when, by withdrawing it, or allowing it to burn until all that projects is consumed, the air will be excluded from the remaining portion, and the fire will be extinguished. The operation may be repeated until the entire repeating match is consumed, when, by removing the cover, $a^1$, or opening the case, $a$, a new match or tape may be inserted. Having now described the invention of the said Tyler, Chandler, and Standish, I would state that I do not wish to be limited to any particular igniting material in the manufacture

of the repeating match, nor to the use of a tape or wick saturated with stearine, as any suitable material may be employed, both for igniting the wick or tape, and saturating the same, such as will adapt it to be readily ignited; nor do I wish to be limited to the specific form of case shown, nor to the particular construction and arrangement of the devices for feeding and igniting the repeating match; the form and arrangement shown being such, however, as to adapt the lighter to general use, and constituting a convenient and compact form for carrying in the pocket."

The claims involved in this suit are the first five, which are as follows:

"(1) In a pocket lighting device, a magazine, case, or shell for inclosing the strip or coil of repeating match, provided with a lip or nose-piece, projected beyond the outlet opening or passage for the match, and serving to uphold the match against the action of the igniting device. (2) In a pocket lighting device, a magazine, case, or shell for containing a repeating match, provided with a lip or nose-piece, substantially as described, for upholding the match, and an igniting device between which and the lip or nose-piece the match is ignited. (3) In a pocket lighting device, a magazine, case, or shell for containing the strip or coil of repeating match, provided with an outlet, opening, or passage for said match, and a lip or nose-piece projected beyond said outlet on a line parallel, or nearly so, with the line of feed of the match. (4) In a pocket lighting device, a magazine, case, or shell, with a lip or nose-piece for upholding the repeating match against the action of the igniting device, and over which the match is fed outward, in combination with an igniting device arranged parallel, or nearly so, with the duct or passage through which the wick or match passes to be ignited. (5) In a pocket lighting device, the combination of a magazine, case, or shell for enclosing a strip or coil of repeating match; a nose-piece extending beyond the outlet therefor in the magazine, case, or shell; a permanently attached igniter, acting in conjunction with said nose-piece, to effect the ignition of the repeating match; and a device for feeding the repeating match over the nose-piece."

One of the defences set up in the answer is that No. 8,490 is for another and different invention from any covered by or described in No. 50,860, or its drawings or specification. The specification of No. 50,860 was as follows:

"Be it known that we, Philos B. Tyler and William M. Chandler, of Springfield, in the state of Massachusetts, and L. F. Standish, of Chicopee Falls, in the state of Massachusetts, have invented certain new and useful improvements in friction matches and apparatus for using them, and we do hereby declare that the following is a full, clear, and exact description thereof, reference being had to the accompanying drawings, making part of this specification, in which figure 1 is a face view of a continuous match, figure 2 a like view of a repeating match, figure 3 a longitudinal section of a repeating match, figure 3a another longitudinal section of a repeating match, (both sections drawn on a large scale,) figure 4 a side view, and figure 5 a section of one form of apparatus for using such matches, and figures 6 and 7 like

views of another form of such apparatus. The same letters indicate like points in all the figures. Prior to our said invention matches for producing flame have been made in separate pieces, of some material which, when ignited, would produce a flame; generally, splints of wood, rendered more readily ignitable by having one end coated for a short distance with sulphur, and the extreme end thereof with phosphorus or other substance, which will readily ignite by friction. At each ignition the entire of one such match is either entirely consumed, or, if not entirely consumed, what is left of it is thrown away, and, generally, the modes of keeping and using such matches are attended with inconvenience and danger. The object of our said invention is to form a continuous or repeating match requiring only so much of it to be used as may be required, and then extinguished, and the residue retained for further use, until, after repeated use, the whole is consumed. And our said invention also relates to apparatus for containing and using such continuous or repeating matches. We prepare said continuous or repeating matches by taking a strip, *a*, of paper or tape of any desirable length, and about a quarter of an inch in width, and saturate it with stearine or equivalent combustible substance, which, when ignited, will produce a flame and burn more slowly and steadily than the paper or tape, and, when ignited, will continue to burn with a flame throughout the entire length, unless it be extinguished by some means. For a continuous match, we apply to one surface of the prepared strip, and along the middle portion thereof, as at *b*, sulphur and phosphorus, applying the sulphur first and then the phosphorus; or, instead, other equivalent substance or compound for igniting by friction may be so applied. But, for making what we term a repeating match, instead of applying the sulphur and phosphorus, or equivalent therefor, continuously, we apply it in spots, at equal distances apart, leaving a length of the prepared strip between every two sufficient to make a flame for the required length of time. And, as the material for igniting by friction does not adhere to the surface of the prepared strip with much force, and for that reason would be likely to be rubbed off in making friction upon it to ignite it, a part of our said invention relates to a means of securing such preparation, and consists in puncturing holes, *c*, through the strip, either before or after it has been prepared with the inflammable matter, so that the phosphorus, or equivalent therefor, when applied, will enter such perforations, as at *d*, and become thereby securely connected with the strip, so that it cannot be rubbed off. For the convenient use of our continuous or repeating matches, the strip is to be placed in a case of a circular form, as represented at *e*, the strip being coiled up in the form of a volute, and one side, *f*, of the case being fitted to the circular rim, *g*, so that it can be put on or taken off readily, like the cover of an ordinary snuff-box, or it may be hinged to the rim. The end of the match-strip is pushed out through an opening in the rim, and into and through a tangent nose-piece or beak, *h*, the under part of which is provided with a toothed roller, *i*, the teeth of which act on the under face of the strip, which is borne against the said roller by a slight spring, *j*, so that, by turning the said roller with the finger, the requred length of match is pushed out beyond the end of the nose-piece. But instead of turning this roller by the finger, acting on the under part, it may be entirely enclosed in the nose-

piece of the case, and its arbor provided with a thumb and finger-wheel. An instrument which we term the igniter is attached at its rear end to a little arbor mounted on the outer or top plate of the nose-piece, and this arbor is formed outside, with a thumb and finger-piece, *l*, so that it can be turned, and the extreme end of this igniter extends to the outer end of the nose-piece, and is there formed with a slightly projecting lip, *m*, brought to a point or roughened on the lower edge, which bears on the match. The igniter is narrow, so that, when turned to one side the lip lies by the side of the strip, and when the end of the match has been pushed out beyond the nose, it is ignited by giving a slight vibrating motion to the igniter, which carries its pointed or roughened lip across the surface of the match. When the match has been ignited and inflamed, the flame can be continued as long as desired, by pushing out more of the match beyond the nose of the case, for it will only become extinguished when the flame reaches, or rather approaches, the end of the nose, which cuts off the supply of atmospheric air which feeds the flame. The form of case above described is that which we deem best suited for general use; but, for lighting chandeliers, gas-burners, etc., at a height beyond the reach of the hand, we make the case in the form of a straight tube, *n*, into which the match-strip is inserted, the upper end of the tube being provided with a nose-piece, roller, and igniter, in like manner as the case already described. We wish it to be understood that, with reference to the matches, we do not limit ourselves to the use of any special material for the strip, nor for saturating the strip to make it burn with a flame, nor to the kind or preparation of material for igniting by friction. We have named the materials and preparations which we deem best, but, as there are many substances and preparations possessing equivalent properties, any of these may be readily substituted without departing from our said invention, and, in fact, the strip may be prepared so as to be sufficiently inflammable to be ignited by the phosphorus without the use of sulphur. In short, our invention does not relate to the preparation or combination of materials for producing a flame by friction, but to the structure of an inflammable match by which it is rendered continuous or repeating."

The claims were as follows:

"(1) The continuous or equivalent repeating match, composed of a strip of substance which, when ignited, will burn with a flame, combined with the preparation of sulphur and phosphorus, or the equivalent thereof, which will ignite by friction, put on along the whole length, or, as the equivalent thereof, in spots, at given distances apart, along the whole length, substantially as and for the purpose described. (2) Piercing the strip with holes, and applying the material that ignites by friction thereto, to prevent such material from becoming detached therefrom, all substantially as described. (3) In the apparatus for using continuous or repeating matches, the nose-piece or tube through which the match passes, in combination with the vibrating igniter, or the eqaivalent thereof, substantially as and for the purpose described. (4) In combination with the nose-piece, through which the match passes, the roller, or equivalent thereof, for moving the match, and the igniter, or the equivalent

thereof, as and for the purpose described. (5) In combination, the case for containing the match, the nose-piece, the roller for moving the match, and the igniter, or the equivalents for them, as and for the purpose described."

1. It is provided, by section 4895 of the Revised Statutes, that "patents may be granted and issued or reissued to the assignee of the inventor or discoverer, but the assignment must first be entered of record in the patent-office." Selden was the fourth assignee in succession of the entire interest in the original patent, and was not the immediate assignee of the inventors. The defendant contends that the word "assignee," in the statute, means the immediate assignee, and not the ultimate assignee, and that reissues Nos. 7,927 and 8,490 were invalid because they were granted to Selden, and he was not the immediate assignee of the inventors. This is not the proper construction of the statute. The "assignee" means the assignee in any degree and however remote. By section 4884 the grant is directed to be made to "the patentee, his heirs or assigns." This is not limited to the first assignee. So section 4898, in declaring that "every patent, or any interest therein, shall be assignable," and that "the patentee or his assigns" may convey an exclusive right under the patent for the whole or any specified part of the United States, clearly means that an assignee in any degree is an assignee for all purposes. All parts of the statute are to be construed harmoniously in this respect, as there appears to be no good reason for a contrary construction. It is true that section 4 of the patent act of February 21, 1793, (1 St. at Large, 322,) used the words "assignees of assigns to any degree;" but the absence of the words "to any degree" cannot, in view of all the provisions of the present statute, be regarded as restricting the meaning of the word "assignee."

2. It is also provided by section 4895 that, "in all cases of an application for a reissue of any patent, the application must be made and the corrected specification signed by the inventor or discoverer, if he is living, unless the patent was issued and the assignment made before the eighth day of July, 1870." The applications for reissue, which resulted in reissues Nos. 7,927 and 8,490, were made, and the corrected specifications were signed, by Selden, and not by Tyler, Chandler, and Standish, and it was not shown that they were not living. It is contended that for this reason those reissues are void. It is claimed that this case is not within the exception in the statute, because, although No. 50,860 was granted before July 8, 1870, the assignment to Selden was not made until September, 1877. But it

is sufficient to bring a case within the exception if the assignment which divested the inventor of his interest in the patent was made before July 8, 1870. In the present case the inventors and patentees assigned the original patent in July, 1866.

3. It is contended that No. 8,490 is void because it is a reissue of a reissue, and that the statute does not authorize the reissue of a reissued patent. But section 4916 authorizes the reissue of "any patent." A reissued patent is none the less a patent, within this section, because it is a reissued patent. The section calls it after its issue a "patent so reissued."

4. It is urged that a reference to the original patent, and to the record of the reissues, discloses that the original patent was not inoperative or invalid by reason of a defective or insufficient specification. But this question was conclusively decided by the commissioner of patents, by the fact of his granting the reissues, the application in each case having set forth that the surrendered patent was inoperative by reason of an insufficient specification. *Seymour* v. *Osborne*, 11 Wall. 516, 543–545.

5. It is objected that in his application for No. 8,490 Selden made oath that No. 7,927 was inoperative by reason of an insufficient specification, and that his attorney afterwards, in a letter to the commissioner of patents, stated that the ground of the application was that the claims of No. 7,927 were too broad, in view of a prior English patent. The decision of the commissioner that a case provided for by section 4916 existed is not reviewable.

6. The same view applies to the objection that Selden's oath did not point out the particular insufficiency in the specification, or how No. 7,927 was inoperative.

7. It is objected that No. 7,927 and No. 7,928 were each of them issued for all parts of the thing patented. The point taken is that the original specification describes two forms of case—the circular case and the extended tube case; that these two forms of case are not "distinct and separate parts of the thing patented;" that each form of case has all the parts of the thing patented; and that each of said reissues is void for want of jurisdiction in the commissioner to issue it as a patent for a distinct and separate part of the thing patented. The commissioner has, by section 4916, power in his discretion, on the surrender of a patent, to "cause several patents to be issued for distinct and separate parts of the thing patented," on payment of the reissue fee for each. The original specification describes

the circular case, and also the extended tube case, the latter to be used for lighting at a height. Each form of case was to have in it the same apparatus. In the reissues, Nos. 7,927 and 8,490 show only a case of circular form for a pocket lighting device; and No. 7,928 shows only an extended tube case, for a gas-lighting torch. In each reissue the apparatus in the case is substantially the same, but each form of apparatus is fairly a distinct and separate part of the thing patented. The pocket lighting device cannot be used to light gas at a height, nor can the extended tube device be carried in the pocket.

8. There is no warrant for the suggestion that what is described and shown in the original specification and drawings is necessarily to be regarded as so dedicated to the public that if not claimed in the original it cannot be claimed in a reissue.

9. It is contended that No. 8,490 is void because it is not for the same invention as the original. One objection urged is that No. 8,490 speaks of the device as one for carrying in the pocket, and as a pocket lighting device, while the original did not speak of the pocket. But the original spoke of the circular case as one for convenient use, and as best suited for general use, and the structure, as shown in the drawings, and, doubtless, in the model, is, manifestly, one convenient for the pocket. What is said on this subject in No. 8,490 cannot be regarded as new matter. There is no difference in structure, or substantial alteration in drawings, or change of capacity. Various verbal criticisms are made in argument as to differences between the text of the original specification and that of No. 8,490, and as to differences in the drawings; but no witness for the defendant points out any of them as of any materiality, nor does a careful examination of those suggested show that they are of the least importance.

10. The defendant sets up against the novelty of the first five claims of No. 8,490, patent No. 48,459, granted to Henry B. Stockwell, June 27, 1865, for an "improved fulminate gas-lighter." That patent has been put in evidence by the defendant, but no expert witness for the defendant speaks of it, while the testimony for the plaintiffs shows that it does not anticipate those claims of No. 8,490. In each one of those claims there is a strip or coil of repeating match supported by a nose-piece, which is attached to the case and projects beyond it, and holds the match up against the action of the igniting device. There is no such arrangement, nor any equivalent for it, in parts or operation, in No. 48,459.

The defendant also sets up against those claims English patent No. 444, to Gabriel Benda, dated October 19, 1852,—provisional specification filed that day; sealed April 16, 1853; full specification filed April 19, 1853,—for "improvements in apparatus for obtaining fire for smokers." The record shows that the attention of the patent-office was directed to the Benda patent in granting No. 8,490, and that the claims were amended in view of that patent. No expert witness for the defendant asserts that Benda is an anticipation. The Benda patent shows a case with a coil or strip of ignitable compound within it, so arranged as to be fed from the case by a feed-wheel, and when fed beyond the case it is ignited by bending it over and scraping it with the loose cover which serves, when the apparatus is not in use, to close the opening through which the strip is fed. There is not in it any nose-piece projected beyond the passage for the match, and serving to uphold the match against the action of the igniting device. There is not any igniting device arranged parallel, or nearly so, with the passage through which the match goes to be ignited. There is no permanently attached igniter, acting in conjunction with such a nose-piece. Benda had a repeating match, and a toothed-wheel match-feeder, feeding the match through a nose-piece to the point of ignition, and something on which the match rested while being ignited by friction produced by hand through an igniting device; but the mechanisms of the two structures are different, and their parts do not co-operate in the same way to attain the result of an ignited match.

11. It is claimed that the defendant's apparatus infringes the first five claims of No. 8,490. The plaintiff's structure operates by the friction of the igniter made to move crosswise by the hand against the match. In the defendant's the feeding of the match raises a spring-hammer, which, when the pellet on the match is at the proper point, is released, and ignites the pellet by percussion. But the defendant's structure contains, nevertheless, all the elements which constitute the first five claims of No. 8,490. The differences between the two structures are formal and unsubstantial, in view of the state of the art and of the real invention of the patentees and of the claims of No. 8,490. No expert witness for the defendant testifies as to non-infringement. There may be features of improvement in the defendant's structure, but still it is an infringement. The same structure is alleged to infringe claims 1 and 2 of letters patent No. 206,835, granted August 6, 1878, to said Selden, for an "improvement in cigar lighters." The device described in that patent has a case

within which is coiled a strip of material having upon it ignitable pellets. This strip is fed out of the case by a feeding device, and, when one of the pellets has arrived at the proper position, it is struck by a hammer, and thereby lights a wick or flexible punk, which is contained in a tube which has a feeding device to govern the motion and position of the wick, and is provided with an extinguisher. The wick tube is so arranged in relation to the point of explosion of the successive pellets as to insure the lighting of the wick by such explosion when the extinguisher is removed from its closed position and the wick is fed forward by the feeding device. Claims 1 and 2 of No. 206,835 are as follows:

"(1) In a pocket lighting device the combination of an adjustable percussion tape, ignited by any suitable mechanism; (2) in a pocket lighting device a box or case having a hammer capable of operation from the exterior, a wick duct or tube, means for feeding and exploding a pellet by the action of the hammer, and a wick feeder."

The "adjustable tinder" is described as a wick or flexible punk, placed in a tube and adapted to be fed forward or upward by a star wheel or other suitable device for that purpose. The "adjustable percussion tape" is described as fed forward by a pawl. A mechanism such as "a star wheel or other suitable device" to feed the wick is an essential element in claim 1. It is a necessary feature of the "adjustable tinder" of that claim. It is also a necessary element of claim 2 as "a wick feeder." In the defendant's structure there is no such mechanism. The wick is pulled by the hand in both directions without any feeding mechanism. Therefore, there is no infringement.

There must be a decree for the plaintiffs, on the first five claims of No. 8,490, for an injunction and an account, with costs.